

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CONNIE SHAFFER | CIVIL ACTION NO. 04-1122 |
| versus | JUDGE HICKS |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | **REFERRED TO:** **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Connie Shaffer ("Plaintiff") was born in 1966. She was diagnosed as having scoliosis when she was a teenager. After dropping out of school in the tenth grade, she worked various jobs as a convenience store clerk or assembly line worker. After working about a year and a half at a meat pie assembly plant, she ceased employment in July 2001. She applied for disability insurance benefits. ALJ Nancy Griswold denied the claim based on a finding that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work and that the Medical-Vocational Guidelines directed a finding of not disabled. Plaintiff appealed to this court, which affirmed. See 02 CV 1637.

While the judicial appeal of ALJ Griswold's decision was pending, Plaintiff filed a new application that alleged she became disabled on June 12, 2002 (the date after ALJ Griswold's denial). A hearing on that application was held before ALJ W. Thomas Bundy, who later issued a written decision that reached the same conclusion reached by ALJ

Griswold: Plaintiff is capable of performing the full range of sedentary work and deemed not disabled by Medical-Vocational Rule 201.18. The Appeals Council denied a request for review. Plaintiff filed this judicial appeal.

The court affirmed the denial of Plaintiff's earlier application with an observation that there was evidence to support Plaintiff's claims – largely her testimony and the conclusions of consultative examiner Dr. John Sandifer – but the ALJ had persuasively explained her credibility assessment and had given reasons for her conclusion that Plaintiff could perform sedentary work despite Dr. Sandifer's opinion that Plaintiff could not perform all of the demands of sedentary work. The court noted that reasonable minds might differ but deferred to the agency based on the ALJ's well-explained credibility assessment and provision of reasons for the weight she afforded Dr. Sandifer's findings. The same degree of explanation is not present in the current case and does not permit the court to affirm the Commissioner's decision.

## Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there

are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Testimony**

Plaintiff testified at her first hearing that, despite her limited education, she can read, write and do simple arithmetic. She said she left her job at the meat pie plant on the advice of a physician at the LSU Medical Center. In addition to constant back pain, she said her left leg sometimes just goes out on her, the leg is sometimes numb and her feet burn. She was then taking Ultram and ibuprofen for pain, and she took Elavil to help her sleep.

Plaintiff said it hurt to drive a car. She did not vacuum but said she could sweep, although she pays a price for doing so. She was able to fix meals for her family "99% of the time," but said it was taking her 2-3 hours to cook a meal because she must sit down and rest occasionally. She did little else in the way of daily activities.

Plaintiff said she had never timed it, but she guessed she could sit for 15-20 minutes before she would need to get up and move. When asked how far she could walk at a stretch, plaintiff responded that she checks the mail and guessed the distance for that walk was about 100 feet. She also guessed that the heaviest weight she could pick up without trouble would be about 10-15 pounds. She said she thought she had carpal tunnel syndrome; her hands bothered her about twice a month.

Plaintiff's most recent hearing was quite brief. She began by testifying that her condition had gradually become "a great deal worse" since her first hearing. Plaintiff was

asked if there was anything she wished to tell the ALJ that she had not said at the earlier hearing. Plaintiff replied:

> I went to the doctor March 6th. I've got osteoporosis in my lower back and my hip. I do not do any cooking. My daughter and my sons cleans my house and my husband. I do not drive. My kids have to take me where I have to go.

Tr. 205-06. Counsel then made some argument and directed the ALJ's attention to the reports of Dr. Stephen Cox (a physician) and Dr. Richard Galloway, Ph.D. (a vocational rehabilitation counselor). The ALJ then turned his attention to Plaintiff and asked if there was anything else she would like to say. Plaintiff replied:

> When we come to court the last time I had filled out some papers and it said as far as my cooking, I didn't actually really understand the question, and I put it took me an hour to four hours, an hour to four hours to cook. Well, I didn't give a good explanation. It takes me that long because I have to go in there and do so much, then go sit down and rest. Now I don't do any cooking.

Tr. 206-8. That was the extent of the hearing.

**Medical Records**

Plaintiff visited the LSU-MC emergency room in October 2000. She complained of hip pain that came on gradually and had been going on for a month. She reported her job at the time involved standing 7-8 hours a day. She was diagnosed as having arthritis and bursitis, and she was prescribed Celebrex. Two months later she returned and complained that her chronic pain had been accompanied by pain in her left leg for the past six days. She reported no relief with ibuprofen. Darvocet was prescribed for the diagnosis of scoliosis and back strain.

Plaintiff was seen as an LSU-MC outpatient on January 5, 2001. She complained of pain in her entire back and right hip, plus numbness of the left leg. She reported she had been sleeping on a recliner. She said her pain was worse than labor pain. The next week, she reported she was feeling much better after taking prescribed medications. However, she returned in April and said the pain was continuing. In July 2001, plaintiff complained of left arm pain the past few days and a burning sensation in her feet for the past three or four months. The physician noted that Plaintiff had been advised to refrain from her work at the plant but had continued to do so. She was again prescribed Naproxen. She complained of continuing pain at a visit in August 2001.

In September 2001, Plaintiff told a physical therapist that, "I have had pain for a long time and I know how to deal." She added, "I don't see how PT is gonna help." She also refused a TENS unit, saying that if her pain got too bad, she could try it. An examination by the therapist found a full range of motion in Plaintiff's back, left hip and knees.

At the request of Plaintiff's attorney, Dr. John Sandifer examined Plaintiff in December 2001. Plaintiff told him that, in addition to her back, hip, and leg problems, she had been having pain, numbness and tingling in both hands. She said she would wake up at night with her hands asleep and have to shake them. She walked with a limp favoring the left leg but did not use a cane or crutch. Examination of the spine revealed what appeared to be scoliosis. The hands and wrists showed a full range of motion. X-rays confirmed scoliosis and indicated degenerative joint disease in the lower lumbar spine. The left hip,

however, appeared normal. Based on his examination, Dr. Sandifer said Plaintiff could not stand on concrete seven to ten hours a day, and could stand only for 45 minutes to one hour at a time before she would need to sit and rest. He said she could sit, however, for only thirty to forty-five minutes at a time and no more than five hours in an eight hour day. Dr. Sandifer also believed Plaintiff could not do repetitive bending at the waist and should not lift over ten to fifteen pounds occasionally. She would have difficulty operating foot controls repetitively with the left leg, and she could not do repetitive stooping, crawling or climbing. He also opined that Plaintiff would have difficulty operating a keyboard or doing anything that involved repetitive wrist flexion/extension activities because of her "probable" carpal tunnel syndrome.

Dr. Stephen Cox completed a medical assessment of ability to do work related activities form (physical) in June 2002. He indicated Plaintiff can occasionally lift/carry five to ten pounds and can stand/walk for five hours during an eight-hour work day, one hour continuously, and can sit only four hours in a work day, two hours continuously. He also assessed some postural and environmental restrictions, as well as a limitation on pushing/pulling. Tr. 158-59. Plaintiff also presented medical records from Dr. Wyche Coleman and the Christus Coushatta Health Center that reflect visits in 2002 to complain of back pain.

## Analysis of the ALJ's Decision

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S. Ct. 376, 379-80 (2003). He found that Plaintiff was not working (step one) and suffered from thoracic scoliosis, an impairment that is severe within the meaning of the regulations (step two) but not severe enough to meet or medically equal a listed impairment (step three). He then found that Plaintiff had the RFC to perform the full range of sedentary work. Although that did not permit Plaintiff to perform her past relevant work (step four), it did result in a finding of not disabled when the guidelines were applied (step five).

Plaintiff generally attacks the ALJ's conclusion that she is not disabled, with her focus on the finding that she had the RFC to perform sedentary work. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Social Security Ruling 83-10 adds: "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."

Dr. Cox indicated that Plaintiff could only sit for four hours in a work day, which weighs against a finding that she can perform sedentary work. Also, Dr. Sandifer found that Plaintiff could sit for no more than five hours in a work day. The ALJ fairly described Dr. Cox's assessment in the current decision (Tr. 21), but he did not discuss what weight he afforded the opinion, the basis for that assignment of weight or how he otherwise reconciled the physician's assigned limitations with and RFC for sedentary work. The ALJ did not discuss Dr. Sandifer's report, which received a great deal of attention in the earlier case. It appears that Dr. Sandifer's report may have been omitted from the record that was presented to the ALJ in this case, although Plaintiff's counsel did apparently submit the report to the Appeals Council. See Letter at Tr. 8. Such evidence, even though submitted too late for the ALJ to consider it, must be considered by the court when it is assessing whether the agency decision is supported by substantial evidence. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

The Commissioner urges in brief that Dr. Sandifer's report should be discounted because it is inconsistent with other (unspecified) evidence of record and not well supported by his own findings, but neither those nor other reasons were cited by the ALJ in his written decision. The Commissioner's brief also attacks Plaintiff's credibility, describing her testimony at the hearing as sounding rehearsed, but the ALJ's written decision did not contain any significant discussion of credibility. To the extent the decision rested in any important way on a credibility assessment, the court may not afford the ALJ's assessment the deference it is due unless reasons are provided to support the assessment.

The more important matter in this case is the lack of a specific discussion of the weight afforded the findings of Dr. Cox and Dr. Sandifer. Dr. Sandifer's report is not mentioned in the current decision, and Dr. Cox's findings are described but not mentioned again. Given the lack of finding by any other physician that Plaintiff can perform the sitting (and other) requirements of sedentary work outlined in Social Security Ruling 83-10, the undersigned is not persuaded that substantial evidence supports the current decision. Accordingly, the Commissioner's decision will be reversed and the case will be remanded pursuant to sentence four of Section 405(g).

**Conclusion**

On remand, Plaintiff and the agency may fully explore and discuss the findings of Dr. Cox and Dr. Sandifer. They may also introduce other medical evidence and explore any relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Plaintiff's counsel is encouraged to ensure that the record is complete with all relevant medical and other evidence at the time the case is presented to the ALJ for decision, and the ALJ is encouraged to articulate reasons, legal and factual, for his or her assessments of the evidence and ultimate decision. The court strives to adhere to the limited standard of review

ordered by Congress, and a full explanation of the reasons for an agency's decision will facilitate that goal and permit cases to reach their conclusion more quickly.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 16th day of August, 2005.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE